**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Plaintiffs
   National Collegiate Athletic Association,
   National Basketball Association, National
   Football League, National Hockey League, and
   Office of the Commissioner of Baseball doing
   business as Major League Baseball

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, an unincorporated association, NATIONAL BASKETBALL ASSOCIATION, a joint venture, NATIONAL FOOTBALL LEAGUE, an unincorporated association, NATIONAL HOCKEY LEAGUE, an unincorporated association, and OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as Major League Baseball,<br><br>                Plaintiffs,<br><br>                v.<br><br>CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey, DAVID L. REBUCK, Director of the New Jersey Division of Gaming Enforcement and Assistant Attorney General of the State of New Jersey, and FRANK ZANZUCCKI, Executive Director of the New Jersey Racing Commission,<br><br>                Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

      Plaintiffs National Collegiate Athletic Association (the "NCAA"), National Basketball Association (the "NBA"), National Football League (the "NFL"), National Hockey

League (the "NHL"), and Office of the Commissioner of Baseball doing business as Major League Baseball ("MLB"), by and through their undersigned counsel for their complaint allege as follows:

## Nature of the Action

1. This is an action challenging New Jersey's plan to sponsor, operate, advertise, promote, license, and authorize gambling on amateur and professional sports, in clear and flagrant violation of federal law.

2. On January 17, 2012, New Jersey Governor Chris Christie signed into law an Act passed by the New Jersey State Legislature purporting to permit wagering at casinos and racetracks on the results of certain collegiate and professional sports or athletic events (the "Sports Gambling Law"). N.J.S.A. 5:12A-1, *et seq.*

3. On July 2, 2012, pursuant to the Sports Gambling Law, the New Jersey Division of Gaming Enforcement published proposed regulations concerning the licensure and operation of sports gambling in Atlantic City casinos and at New Jersey's racetracks, N.J.A.C. 13:69N (the "Sports Gambling Regulations"). The public comment period for the Sports Gambling Regulations ends on August 31, 2012. Once these regulations become effective, which is expected to occur within the next two months, Atlantic City casinos and racetracks across New Jersey will be able to apply for licenses and commence gambling operations on amateur and professional sports.

4. The Sports Gambling Law and Sports Gambling Regulations, and New Jersey's plan to sponsor, operate, advertise, promote, license, and authorize gambling on amateur and professional sports thereunder, are unlawful under the plain terms of the Professional and Amateur Sports Protection Act, 28 U.S.C. § 3701 *et seq.* ("PASPA"). Enacted by Congress in 1992 in order to halt the spread of gambling on sporting events in the United States, PASPA

imposes a broad ban on sports betting, subject only to narrow exceptions that do not apply here and would not permit the sports betting that the Defendants seek to implement in the State of New Jersey.

5. Gambling on amateur and professional sports threatens the integrity of those sports and is fundamentally at odds with the principle – essential to the success of Plaintiffs – that the outcomes of collegiate and professional athletic contests must be determined, and must be perceived by the public as being determined, solely on the basis of honest athletic competition. Plaintiffs have consistently opposed legalizing sports gambling in other states and at the federal level because it undermines the public's faith and confidence in the character of amateur and professional team sports.

6. Amateur and professional sports are an integral part of American culture, particularly among the country's youth who often look up to athletes as role models. The sponsorship, operation, advertising, promotion, licensure, and authorization of sports gambling in New Jersey would irreparably harm amateur and professional sports by fostering suspicion that individual plays and final scores of games may have been influenced by factors other than honest athletic competition. As Congress recognized when it enacted PASPA, the proliferation of sports gambling threatens to harm the reputation and goodwill of Plaintiffs, and to adversely affect the way the public views amateur and professional sports. Plaintiffs cannot be compensated in money damages for the harm that sports gambling poses to the character and integrity of their respective sporting events. Once their reputations and goodwill have been compromised, and the bonds of loyalty and devotion between fans and teams have been broken, Plaintiffs will have been irreparably injured in a manner that cannot be measured in dollars.

## The Parties

7. Plaintiff the NCAA is a voluntary unincorporated association of approximately 1300 members consisting of colleges, universities, conferences, associations, and other educational institutions. Governed by its member institutions, the NCAA's fundamental purpose is to maintain intercollegiate athletics as an integral part of the educational program and the athlete as an integral part of the student body. The NCAA's headquarters are located at 700 West Washington Street, Indianapolis, Indiana 46204.

8. Plaintiff the NBA is a joint venture of thirty member teams that is organized under the laws of New York, with its principal place of business located at 645 Fifth Avenue, New York, New York 10022. The NBA engages in the production and marketing of NBA basketball and operates a professional basketball league in the United States and Canada.

9. Plaintiff the NFL is an unincorporated association controlled by its thirty-two constituent member clubs. Originally formed in 1920 as the American Professional Football Conference, the league has been operating under the NFL moniker since 1922. The NFL's headquarters are located at 345 Park Avenue, New York, New York 10154.

10. Plaintiff the NHL is an unincorporated association, composed of thirty Member Clubs. NHL teams are located throughout the United States and Canada. The NHL League Office headquarters are located at 1185 Avenue of the Americas, New York, New York 10036.

11. Plaintiff MLB is an unincorporated association whose members are the thirty Major League Baseball Clubs. MLB, on behalf of its members, has responsibility for administrative and operational matters relating to Major League Baseball. MLB headquarters are located at 245 Park Avenue, New York, New York 10167.

12. Defendant Christopher J. Christie is the Governor of the State of New Jersey. Elected to office in November 2009, Governor Christie was sworn into office on January 19, 2010.

13. Defendant David L. Rebuck is an Assistant Attorney General of the State of New Jersey and the current Director of the New Jersey Division of Gaming Enforcement, an agency created by N.J.S.A. 5:12-55 that operates as a division of the Department of Law and Public Safety. The Director of the Division of Gaming Enforcement is appointed by the Governor with the advice and consent of the New Jersey Senate. Director Rebuck has primary responsibility for enforcing New Jersey's Casino Control Act, N.J.S.A. 5:12-1 *et seq.*, and regulations promulgated thereunder to oversee casino operations in New Jersey. The Sports Gambling Law purports to authorize the Division of Gaming Enforcement to approve and regulate the business of accepting wagers on amateur and professional sports events, including hearing and deciding applications for licenses to do so. Under this authority, the Division of Gaming Enforcement promulgated the Sports Gambling Regulations which, when effectuated, will authorize sports gambling at New Jersey casinos and racetracks.

14. Defendant Frank Zanzuccki is the Executive Director of the New Jersey Racing Commission, an agency created by N.J.S.A. 5:5-22 that advocates the growth, development and promotion of the horse racing industry in the state. The Executive Director is appointed by the nine Commissioners of the New Jersey Racing Commission, each of whom is appointed by the Governor with the advice and consent of the New Jersey Senate. N.J.S.A. 5:5-23, 25. The Sports Gambling Law purports to authorize the New Jersey Racing Commission to approve, along with the Division of Gaming Enforcement, the business of accepting wagers on amateur and professional sports events at racetracks in the state.

### Jurisdiction and Venue

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

### Congress Enacts Federal Legislation Outlawing Sports Gambling

17. PASPA was enacted on October 28, 1992 amid growing public concern over the significant harm that would result from the spread of gambling on amateur and professional sporting events in the United States. The statute, which became effective on January 1, 1993, prohibits any person or governmental entity from sponsoring, operating, advertising, promoting, licensing, or authorizing by law or compact:

> a lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly (through the use of geographical references or otherwise), on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games.

28 U.S.C. § 3702.

18. In recognition of the fact that the spread of state-sponsored gambling on the outcome of sports events would irreparably harm sports leagues and organizations like the NCAA, the NBA, the NFL, the NHL, and MLB, PASPA explicitly gives amateur and professional sports organizations standing to seek an injunction for any violation of its provisions. 28 U.S.C. § 3703.

19. PASPA sets forth only four narrow exceptions to the broad prohibition on gambling on amateur and professional sporting events, none of which applies to the activity contemplated to take place in New Jersey under the Sports Gambling Law and the Sports Gambling Regulations. The first two exceptions apply to certain sports gambling activity that had previously been conducted during specified time periods prior to the Act's passage. *Id.* at §

3704(a)(1)-(2). The third exception provided a one-year window, from January 1, 1993 to January 1, 1994, during which New Jersey was afforded the opportunity to authorize sports betting. *Id.* at § 3704(a)(3). New Jersey declined that opportunity. The final exception applies only to pari-mutuel animal racing and jai-alai games. *Id.* at § 3704(a)(4).

20. Thus, under the plain terms of PASPA, New Jersey is expressly barred by federal law from sponsoring, operating, advertising, promoting, licensing, or authorizing sports-based gambling.

### In Direct Defiance of Federal Law, New Jersey Enacts the Sports Gambling Law and Promulgates the Sports Gambling Regulations

21. Effective December 8, 2011, the New Jersey Constitution was amended to permit the New Jersey Legislature to authorize wagering "on the results of any professional, college, or amateur sport or athletic event" at casinos in Atlantic City and horse racetracks throughout the state. N.J. Const., Art. IV, Sec. VII, Para. 2. Prior to this amendment, the New Jersey Constitution prohibited wagering on any such amateur and professional sporting events (excluding horse racing). In obvious recognition of the harm caused by sports gambling, the New Jersey Constitution even as amended still does not permit gambling "on a college sport or athletic event that takes place in New Jersey or on a sport or athletic event in which any New Jersey college team participates regardless of where the event takes place." *Id.*

22. On January 9, 2012, the New Jersey Legislature passed the Sports Gambling Law, which Governor Christie signed into law on January 17, 2012.

23. The Sports Gambling Law provides that licensed casino or gambling houses located in Atlantic City, and horse racetracks in New Jersey, may operate "sports pools" – "the business of accepting wagers on any sports event by any system or method of wagering" – upon the approval of the Division of Gaming Enforcement (for casinos) or the New Jersey

Racing Commission (for racetracks) and in accordance with applicable regulations promulgated pursuant to the statute. N.J.S.A. 5:12A-2. In addition, the Division of Gaming Enforcement was authorized to issue licenses to operate sports betting parlors, and to regulate sports pools and the conduct of sports wagering permitted by the Sports Gambling Law. N.J.S.A. 5:12A-4.

24. Consistent with the amendment to the New Jersey Constitution, the Sports Gambling Law does not permit gambling on "any collegiate sport or athletic event that takes place in New Jersey or a sport or athletic event in which any New Jersey college team participates regardless of where the event takes place." N.J.S.A. 5:12A-1.

25. The Sports Gambling Law requires that, before gambling on sports can commence in the state, the Division of Gaming Enforcement must first promulgate regulations governing the conduct of sports wagering. N.J.S.A. 5:12A-4. Accordingly, sports gambling cannot commence within the State of New Jersey unless and until applicable regulations have been proposed and become effective.

26. In a May 24, 2012 news conference, Governor Christie made clear his intention to proceed with those regulations and to commence a sports wagering operation within the State of New Jersey by the Fall of 2012:

> **We intend to go forward and allow sports gambling to happen, and if someone wants to stop us, then they'll have to take action to try to stop us.** But I've signed the legislation this year to authorize it. The regulations now will allow us to implement sports gaming. **We intend to** work with the casino industry here in Atlantic City and with the folks in the horse racing industry to **get it implemented by this Fall**. Now, am I expecting that there may be some legal action taken against us to try to prevent it? Yes. But that's going to be their burden to try to prevent it. That's why we're doing it the way we're doing it. So I have every confidence that we're going to be successful. We may have to go through some litigation to get there . . . but I think we're going to be successful.

(Video at http://www.nj.com/news/index.ssf/2012/05/gov_christie_says_atlantic_cit.html) (emphasis added).


Racing Commission (for racetracks) and in accordance with applicable regulations promulgated pursuant to the statute. N.J.S.A. 5:12A-2. In addition, the Division of Gaming Enforcement was authorized to issue licenses to operate sports betting parlors, and to regulate sports pools and the conduct of sports wagering permitted by the Sports Gambling Law. N.J.S.A. 5:12A-4.

24. Consistent with the amendment to the New Jersey Constitution, the Sports Gambling Law does not permit gambling on "any collegiate sport or athletic event that takes place in New Jersey or a sport or athletic event in which any New Jersey college team participates regardless of where the event takes place." N.J.S.A. 5:12A-1.

25. The Sports Gambling Law requires that, before gambling on sports can commence in the state, the Division of Gaming Enforcement must first promulgate regulations governing the conduct of sports wagering. N.J.S.A. 5:12A-4. Accordingly, sports gambling cannot commence within the State of New Jersey unless and until applicable regulations have been proposed and become effective.

26. In a May 24, 2012 news conference, Governor Christie made clear his intention to proceed with those regulations and to commence a sports wagering operation within the State of New Jersey by the Fall of 2012:

> **We intend to go forward and allow sports gambling to happen, and if someone wants to stop us, then they'll have to take action to try to stop us.** But I've signed the legislation this year to authorize it. The regulations now will allow us to implement sports gaming. **We intend to** work with the casino industry here in Atlantic City and with the folks in the horse racing industry to **get it implemented by this Fall.** Now, am I expecting that there may be some legal action taken against us to try to prevent it? Yes. But that's going to be their burden to try to prevent it. That's why we're doing it the way we're doing it. So I have every confidence that we're going to be successful. We may have to go through some litigation to get there . . . but I think we're going to be successful.

(Video at http://www.nj.com/news/index.ssf/2012/05/gov_christie_says_atlantic_cit.html) (emphasis added).

27. On July 2, 2012, the Division of Gaming Enforcement published the Sports Gambling Regulations for public comment. The Regulations state that they were "authorized by David Rebuck, Director, Division of Gaming Enforcement." The Sports Gambling Regulations are also posted on the website for the Division of Gaming Enforcement. (*See* http://www.nj.gov/oag/ge/proposed_rules.htm.)

28. The public comment period for the Sports Gambling Regulations is scheduled to end on August 31, 2012. Once the Sports Gambling Regulations are adopted and become effective, which is expected to occur by mid-September or early October at the latest, New Jersey state officials will begin accepting applications for licenses to engage in sports betting in New Jersey.

29. On information and belief, casinos in Atlantic City and horse racetracks in New Jersey intend to seek approval and apply for licenses from the Division of Gaming Enforcement and/or the New Jersey Racing Commission immediately after the Sports Gambling Regulations become effective. Indeed, Dennis Drazin, the operator of Monmouth Park racetrack in New Jersey, recently stated that he is "willing to move forward right now" with sports gambling. *See* "Monmouth Park plans to offer sports betting in fall, despite federal ban," July 3, 2012 (available at http://www.northjersey.com/news/Monmouth_Park_wants_to_offer_betting_on_professional_and_college_sports.html).

## COUNT I
### (Violation of PASPA)

30. Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as though fully set forth herein.

31. Under the plain language of PASPA, the State of New Jersey and persons or entities in New Jersey are prohibited from sponsoring, operating, advertising, promoting, licensing or authorizing sports gambling, sports wagering, or a sports lottery. 28 U.S.C. § 3702. The relevant exceptions to PASPA's ban on sports gambling do not apply to New Jersey or entities operating therein. 28 U.S.C. § 3704.

32. In clear violation of PASPA, and in contravention of the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, Cl. 2, New Jersey has enacted the Sports Gambling Law.

33. In clear violation of PASPA, and in contravention of the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, Cl. 2, New Jersey officials, including Defendants, have announced their intention to effectuate and enforce the Sports Gambling Regulations, which expressly authorize sports gambling in New Jersey and establish a licensing scheme to regulate such gambling.

34. Plaintiffs' reputation and goodwill will be irreparably damaged if the violations alleged herein are not preliminarily and permanently enjoined, including but not limited to the fact that the proliferation of sports gambling will adversely affect the way that the public views amateur and professional sports.

35. Therefore, pursuant to the express authority conferred by Section 3703 of PASPA, Plaintiffs seek an Order enjoining Defendants from implementing or enforcing the Sports Gambling Law and the Sports Gambling Regulations, and from sponsoring, operating,

advertising, promoting, licensing or authorizing any form of gambling on amateur or professional sports.

WHEREFORE, Plaintiffs respectfully seek an Order of this Court:

a. Declaring that the Sports Gambling Law violates PASPA insofar as it purports to enable the State of New Jersey and its officials to sponsor, operate, advertise, promote, license, and/or authorize sports betting schemes in New Jersey;

b. Declaring that the Sports Gambling Regulations violate PASPA insofar as they purport to enable the State of New Jersey and its officials to sponsor, operate, advertise, promote, license, and/or authorize sports betting schemes in New Jersey;

c. Preliminarily and permanently enjoining Defendants, and all others acting on their authority, instruction, and behalf, or under the authority of their respective offices, from implementing or enforcing the Sports Gambling Law and the Sports Gambling Regulations, and from sponsoring, operating, advertising, promoting, licensing, or authorizing any lottery, sweepstakes, or other betting, gambling, or wagering scheme based, directly or indirectly, on one or more competitive games in which amateur or professional athletes participate, or are intended to participate, or on one or more performances of such athletes in such games;

d. Awarding Plaintiffs their costs and attorneys' fees; and

e.  Granting such other and further relief as may be appropriate.

Respectfully Submitted,

**McCARTER & ENGLISH, LLP**
**SKADDEN ARPS SLATE MEAGHER & FLOM LLP**


By: _William J. O'Shaughnessy_
    William J. O'Shaughnessy
    **McCARTER & ENGLISH, LLP**
    Four Gateway Center
    100 Mulberry Street
    Newark, New Jersey 07102
    (973) 622-4444

Jeffrey A. Mishkin (pro hac vice application to be filed)
Anthony J. Dreyer
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Plaintiffs
   National Collegiate Athletic Association, National Basketball Association, National Football League, National Hockey League, and Office of the Commissioner of Baseball doing business as Major League Baseball

Dated: August 7, 2012