**McCARTER & ENGLISH, LLP**

Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
(973) 622-4444

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

Four Times Square
New York, New York  10036
(212) 735-3000

**BANCROFT PLLC**

1919 M Street, N.W., Suite 470
Washington, DC  20036
(202) 234-0090

Attorneys for Plaintiffs
    National Collegiate Athletic Association,
    National Basketball Association, National
    Football League, National Hockey League, and
    Office of the Commissioner of Baseball doing
    business as Major League Baseball

|  |  |
|---|---|
|  | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY** |

|  |  |  |
|---|---|---|
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, | : <br> : <br> : | Civil Action No. 12-cv-4947 (MAS)(LHG) |
| Plaintiffs, | : <br> : | Hon. Michael A. Shipp, U.S.D.J. <br> Hon. Lois H. Goodman, U.S.M.J. |
| v. | : <br> : | |
| CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey, *et al.*, | : <br> : <br> : | |
| Defendants. | : <br> : | |

### PLAINTIFFS' BRIEF IN FURTHER
### SUPPORT OF DEFENDANTS' MOTION TO SEAL AND IN SUPPORT
### OF PLAINTIFFS' CROSS-MOTION TO SEAL ADDITIONAL DOCUMENTS

**Table of Contents**

PRELIMINARY STATEMENT ................................................1

ARGUMENT ................................................................2

LOCAL CIVIL RULE 5.3(C)(2)'S REQUIREMENTS TO SEAL ARE MET HERE ................2

    I.    Legal Standard ................................................2

    II.    Sealing of the Designated Documents is Appropriate ................5

        A.    Documents Containing Private, Competitively Sensitive Market or Business Research ................5

            1.    Exhibit 22 to the Slocum Certification ................5
            2.    Exhibit 23 to the Slocum Certification ................6
            3.    Exhibit 29 to the Slocum Certification ................7
            4.    Exhibits 35-39 to the Slocum Certification & Exhibit 23 to the Hernandez Certification ................8
            5.    Exhibit 17 to the Hernandez Certification ................9

        B.    Documents Containing Confidential League Policies ................10

            1.    Exhibits 30 and 45 to the Slocum Certification ................10
            2.    Exhibits 40 and 41 to the Slocum Certification ................11
            3.    Exhibit 42 to the Slocum Certification & Exhibit 21 to the Hernandez Certification ................12
            4.    Exhibit 46 to the Slocum Certification ................13
            5.    Exhibit 20 to the Hernandez Certification ................14

        C.    Depositions, Reports, and Court Submissions that Discuss the Confidential Material Addressed Above ................14

            1.    Exhibit 12 to the Slocum Certification & Exhibit 7 to the Hernandez Certification ................14
            2.    Exhibit 13 to the Slocum Certification & Exhibit 1 to the Hernandez Certification and Exhibit 8 to the Slocum Certification &Exhibit 2 to the Hernandez Certification ................16
            3.    Exhibit 16 to the Slocum Certification & Exhibit 3 to the Hernandez Certification ................17
            4.    Exhibit 19 to the Slocum Certification & Exhibit 9 to the Hernandez Certification ................18
            5.    Exhibit 1 to the Slocum Certification & Exhibit 31 to the Hernandez Certification ................19

ME1 14457008v.3

6.     Defendants' Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment; Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1; Plaintiffs' Reply Brief in Support of their Motion for Summary Judgment and, if Necessary to Preserve the Status Quo, a Preliminary Injunction, and Brief in Opposition to Defendants' Cross-Motion for Summary Judgment; Plaintiffs' Reply Statement of Undisputed Material Facts Pursuant to Local Rule 56.1; and Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ..............21

D.     Documents For Which Sealing Is Unnecessary........................................21

1.     Exhibits 5, 9, 10 and 11 to the Slocum Certification ....................21
2.     Exhibit 14 to the Slocum Certification ..........................................22
3.     Exhibits 15 and 32 to the Slocum Certification ............................22

CONCLUSION.....................................................................................................................23

ME1 14457008v.3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Arbinet-thexchange, Inc. v. Mashinsky*,
    No. 06-1916, 2006 WL 2828469 (D.N.J. Sept. 29, 2006) ............................3, 5, 6, 7, 8, 13, 14

*Bracco Diagnostics, Inc. v. Amersham Health Inc.*,
    No. 03-6025, 2007 WL 2085350 (D.N.J. July 18, 2007) ......................................................3, 6

*In re Cendant Corp.*,
    260 F.3d 183 (3d Cir. 2001).........................................................................................................2

*Goldenberg v. Indel*,
    No. 09-5202, 2012 WL 15909 (D.N.J. Jan. 3, 2012) ......................................................*passim*

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978)....................................................................................................................2

*Pansy v. Boro of Stroudsberg*,
    23 F.3d 772 (3d Cir. 1994)..........................................................................................2, 11, 12, 16

*Publicker Indus. Inc. v. Cohen*,
    733 F.2d 1059, 1074 (3d Cir. 1984)...........................................................................................3

*Vista India, Inc. v. Raaga, LLC*,
    No. 07-1262, 2008 WL 834399 (D.N.J. Mar. 27, 2008) .................................................*passim*

**RULES**

Local Civil Rule 5.3(c)(2).................................................................................................*passim*

Civ. R. 5.3(c)(2)(a).................................................................................................................3

Civ. R. 5.3(c)(2)(b) ......................................................................................................*passim*

Civ. R. 5.3(c)(2)(c).......................................................................................................*passim*

Civ. R. 5.3(c)(2)(d) .....................................................................................................*passim*

iii

## PRELIMINARY STATEMENT

Plaintiffs submit this Brief pursuant to Local Civil Rule 5.3 in further support of Defendants' Motion to Seal Documents and in support of Plaintiffs' Cross-Motion to Seal. Plaintiffs seek to seal documents – and references thereto – that were produced in discovery under the designation "confidential" or "highly confidential" due to each of those documents containing proprietary and confidential business, marketing, or other information of at least one of the five Plaintiffs, the National Collegiate Athletic Association ("NCAA"), National Basketball Association ("NBA"), National Football League ("NFL"), National Hockey League ("NHL"), and Office of the Commissioner of Baseball, doing business as Major League Baseball ("MLB"). *See* October 23, 2012 Discovery Confidentiality Order ¶¶ 1-3, 13 [document 56]. Public disclosure of the documents that Defendants and Plaintiffs have moved to seal would cause serious injury to the respective parties that produced those documents by disclosing information that would cause the producing party to be placed at a competitive disadvantage as compared to other entities that organize, sanction, or conduct athletic events (including other Plaintiffs) and other entertainment service providers. Furthermore, in keeping with the presumption of public access to judicial proceedings, where possible, entire documents subject to this motion have not been redacted; instead, the publicly filed versions of those documents contain limited, statement-specific redactions. For the reasons set forth below, these confidential documents – along with the briefing, 56.1 statements, deposition transcripts, and a report that recite and discuss the confidential information in the documents – meet the requirements for being filed under seal as set out in Local Civil Rule 5.3(c)(2).[1]

---

[1]The documents that are the subject of this motion to seal have been filed with the Court today at docket entry 96, and redacted versions were publicly filed in support of Defendants' opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment [document 76], Plaintiffs' Reply Brief in Further Support of their Motion for Summary

## ARGUMENT

## LOCAL CIVIL RULE 5.3(C)(2)'S REQUIREMENTS TO SEAL ARE MET HERE

**I.    Legal Standard**

Local Civil Rule 5.3(c) places the burden of proof on the moving party to show why a motion to seal or otherwise restrict public access should be granted.  However, where the information required to support such a motion is not in possession of the moving party, the Rule allows a non-moving party that is in possession of that information to provide "supplemental motion papers in support of the motion."  L. Civ. R. 5.3(c)(2).

While there is a general right to public access to judicial records, that right "is not absolute."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 59 (1978).  In this Court, before documents will be sealed, Local Civil Rule 5.3(c) requires a showing of:

(a)    the nature of the materials or proceedings at issue;

(b)    the legitimate private or public interests which warrant the relief sought;

(c)    the clearly defined and serious injury that would result if the relief sought is not granted; and

(d)    why a less restrictive alternative to the relief sought is not available.

*Id.*; *see also In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (setting out the factors required to rebut the presumption of public access); *Pansy v. Boro of Stroudsberg*, 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity.")

---

Judgment and, if Necessary to Preserve the Status Quo, a Preliminary Injunction, and Brief in Opposition to Defendants' Cross-Motion for Summary Judgment [document 95].

The first prong of Local Civil Rule 5.3(c)(2) requires naming the documents over which a seal is sought and stating their character.  L. Civ. R. 5.3(c)(2)(a).  For example, exhibits may be characterized as "written agreements," "e-mail communications," or "financial spreadsheets." *Goldenberg v. Indel,* No. 09-5202, 2012 WL 15909 at *3 (D.N.J. Jan. 3, 2012).

Under the second prong of the Local Civil Rule, confidentiality of business agreements, trade secrets or commercial information are classified legitimate private interests, the disclosure of which can harm a litigant's competitive standing in the marketplace.  *See, e.g.,* L. Civ. R. 5.3(c)(2)(b); *Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1074 (3d Cir. 1984) (recognizing that courts have traditionally protected sensitive financial information such as trade secrets from public disclosure); *Goldenberg*, 2012 WL 15909 at *3 (proprietary non-public business  and financial information to be legitimate private interest); *Arbinet-thexchange, Inc. v. Mashinsky*, No. 06-1916, 2006 WL 2828469 at *2 (D.N.J. Sept. 29, 2006) (protection of the underlying commercial interests including a company's internal strategy for the further development of its business, future plans, marketing plans, and technology plans was legitimate interest); *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, No. 03-6025, 2007 WL 2085350 at *7 (D.N.J. July 18, 2007) (maintaining competitiveness is a legitimate interest); *Vista India, Inc. v. Raaga, LLC*, No. 07-1262, 2008 WL 834399 at *3 (D.N.J. Mar. 27, 2008) (maintaining the confidentiality of the terms of a corporation's non-public agreements is a legitimate interest).

The third prong of Local Civil Rule 5.3(c)(2) requires that the movant clearly define the serious injury that would result if the motion to seal is not granted.  L. Civ. R. 5.3(c)(2)(c).  For example, being placed in a position of competitive disadvantage is serious injury will permit the sealing of litigation documents.  *Goldenberg*, 2012 WL 15909 at *4.  In *Goldenberg,* a court within this District recently reasoned that, were the documents that the movant sought to seal

3

publicly released, "[c]ompetitors would be able to review the specific terms of their broker-dealer agreements, advisors agreements and shareholder agreements" as well as review financial arrangements "and use that information to gain an advantage over the [movants] in the marketplace." *Id*. Further, the court explained that, "[b]y allowing this information to be accessible to the public, competitors of [movants] would learn sensitive information as to how these Affiliated Entities structure their business internally and have access to private financial information regarding shareholders and investment monies." *Id.*; *see also Raaga*, 2008 WL 834399 at *4 (public disclosure of licensing agreements would cause the moving party "a clearly defined injury if . . . disclosed" both due to harming business with existing and future clients and giving competitors a negotiating advantage).

The fourth prong of Local Civil Rule 5.3(c)(2) requires that the movant articulate why a less restrictive alternative to the relief sought is not available. L. Civ. R. 5.3(c)(2)(d). To satisfy this prong, the movant generally must selectively redact the commercially important materials from a document, as opposed to redacting the entire document. *Goldenberg*, 2012 WL 15909 at *4. Entire documents, however, may be redacted "as a whole" when they contain sensitive information, such as, in the *Goldenberg* case, the internal structure of the movant's business agreements and spreadsheets illustrating the calculation of financial payments. *See id.*

II.     **Sealing of the Designated Documents is Appropriate**

   A.     **Documents Containing Private, Competitively Sensitive Market or Business Research**

      *1.     Exhibit 22 to the Slocum Certification*

Exhibit 22 to the Slocum Certification is a copy of an October 2009 NFL document entitled "NFL Valuation: Fantasy Football Module," ("the NFL Valuation") and meets Local Civil Rule 5.3(c)(2)'s requirements for sealing. The NFL has a legitimate interest that warrants an Order permitting Defendants to file Exhibit 22 under seal. *See* L. Civ. R. 5.3(c)(2)(b). The NFL Valuation is not publicly available and has not been disclosed to the other Plaintiffs in this case, because it contains highly confidential and proprietary business and marketing research and information. (Certif. of Lawrence P. Ferazani, Jr., on Behalf of the NFL ("Ferazani Certif.") ¶ 4.) Specifically, the NFL Valuation presents findings from an interview-based market research study regarding market development and assessment of consumer value relating to the NFL; particularly, the portions attached to the Slocum Certification address findings from a January 2009 Fan Valuation Study relating to the topic of fantasy football. (Ferazani Certif. ¶ 4.) The NFL Valuation is therefore a private company's internal strategy for the further development of its business and marketing, and for which there is a legitimate private interest for sealing purposes. *See Arbinet-thexchange, Inc.*, 2006 WL 2828469 at *2; L. Civ. R. 5.3(c)(2)(b). The public disclosure of this confidential information would cause serious injury to the NFL warranting the imposition of a seal. *See* L. Civ. R. 5.3(c)(2)(c). As set out in the Ferazani Certification, if other sports entities or entertainment companies gain access to the information contained within the NFL Valuation, those entities will be better able to market themselves against the NFL, resulting in competitive and financial harm to the NFL. (Ferazani Certif. ¶ 5.) The NFL Valuation also reveals confidential marketing analysis and potential future marketing

5

strategies relating to the NFL, disclosure of which would result in financial harm to the NFL. (Ferazani Certif. ¶ 5.)  The disclosure of this information will therefore cause the NFL serious injury by placing it at a competitive disadvantage and harm both existing business and future business, thus satisfying Local Civil Rule 5.3(c)(2)(c)'s requirement for sealing.  *See Goldenberg*, 2012 WL 15909 at *4; *Raaga*, 2008 WL 834399 at *4.  Because the entire NFL Valuation contains highly sensitive information of which redaction is not practical, no less restrictive alternative to sealing the entirety of the document is available.(Ferazani Certif. ¶ 6; *see* L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.)

### 2.   *Exhibit 23 to the Slocum Certification*

Exhibit 23 to the Slocum Certification is a copy of Copernicus Marketing and Research's presentation titled "The Emerging Role of the Web for the NFL," dated March 25, 2002 ("Copernicus I") and meets this Court's requirements for sealing.  The NFL has a legitimate interest that warrants the filing of Copernicus I under seal, because Copernicus I is not publicly available, has not been disclosed to the other Plaintiffs in this case, and contains highly confidential and proprietary business and marketing research and information of the NFL.  (*See* Ferazani Certif. ¶ 7; *see* L. Civ. R. 5.3(c)(2)(b); *Arbinet-thexchange, Inc.*, 2006 WL 2828469 at *2 (a company's business development and  marketing plans are a legitimate interest.); *Bracco Diagnostics, Inc.*, 2007 WL 2085350 at *7 (D.N.J. July 18, 2007) (maintaining competitiveness is a legitimate interest).)  Specifically, Copernicus I contains research, analysis, and recommendations for marketing and development as related to fantasy football and NFL.com. (Ferazani Certif. ¶ 7.)  It also contains an analysis of users of NFL.com.  (*Id.*)  The public disclosure of Copernicus I would cause serious injury to the NFL, because, if other sports entities or entertainment companies gain access to the information contained within Copernicus I, those entities will have inside  information with which they can be better able to market themselves

6

against the NFL, resulting in competitive and financial harm to the NFL.  (Ferazani Certif. ¶ 8;
*see* L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4 (being placed in a position of
competitive disadvantage is a serious injury); *Raaga*, 2008 WL 834399 at *4 (same).)  Further,
no less restrictive alternative exists to sealing the entirety of the excerpts from Copernicus I,
because the entirety of the excerpts contain highly sensitive information of which redaction is not
practical.  (Ferazani Certif. ¶ 8; *see* L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

### 3.      *Exhibit 29 to the Slocum Certification*

Exhibit 29 to the Slocum Certification is a copy of excerpts from the NHL Fantasy
Hockey 2010-2011 Report, and it meets the requirements for sealing.  The NHL has a legitimate
interest that warrants an Order permitting Defendants to file Exhibit 29 under seal.  *See* L. Civ.
R. 5.3(c)(2)(b).  This document is not publicly available, has not even been disclosed to the other
Plaintiffs in this case, and contains highly confidential and proprietary business and marketing
research, information, and analysis regarding (i) sports fans' perceptions of the NHL and (ii)
numerous issues that pertain to how the NHL markets itself, and (3) the NHL's internal financial
information.  (Certification of Jessica C. Berman of the National Hockey League ("Berman
Certif.") ¶ 4; *see* L. Civ. R. 5.3(c)(2)(b); *Arbinet-thexchange, Inc.*, 2006 WL 2828469 at *2.)
The public disclosure Exhibit 29 would cause serious injury to the NHL, because, if other sports
or entertainment entities gain access to the information contained within this study, those entities
will be better able to market themselves against the NHL resulting in competitive and financial
harm to the NHL.  (Berman Certif. ¶ 5; *see* L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909
at *4; *Raaga*, 2008 WL 834399 at *4.)  Further, because Slocum Exhibit 29 containing highly
sensitive business information of which redaction is not practical, no less restrictive alternative to
sealing the entirety of the document is available.  (Berman Certif. ¶ 6; *see* L. Civ. R. 5.3(c)(2)(d);
*Goldenberg*, 2012 WL 15909 at *4.)

7

**4.      *Exhibits 35-39 to the Slocum Certification &***
***Exhibit 23 to the Hernandez Certification***

Exhibit 35 to the Slocum Certification is a copy of the December 2008 Harris Interactive

Study of the NBA and Gambling, Exhibit 36 is a copy of the December 2009 Harris Interactive

NBA Integrity Study, Exhibit 37 is a copy of the March 2010 Harris Interactive NBA Integrity

Study, Exhibit 38 is a copy of the Fall 2009 Harris Interactive NBA Sports Integrity Study, and

Exhibit 39 is a copy of the Spring 2011 Harris Interactive NBA Sports Integrity Study, and

Exhibit 23 to the Hernandez Certification is a copy of the July 2007 Harris QuickQuery NBA

Las Vegas/Gambling Survey (collectively, "Harris Interactive NBA Studies").  All of these

documents meet Local Civil Rule 5.3(c)(2)'s standard for sealing.  The NBA has a legitimate

interest that warrants an Order permitting Defendants to file the Harris Interactive NBA Integrity

Studies under seal.  *See* L. Civ. R. 5.3(c)(2)(b).  The documents are not publicly available, have

not been disclosed to the other Plaintiffs in this case, and contain highly confidential and

proprietary business and marketing research and information.  (Certification of Daniel J. Spillane

of the National Basketball Association in Further Support of Defendants' Motion to Seal

Documents ("Spillane Certification") ¶ 8.)  Specifically, the studies – which were commissioned

by the NBA – are the type of proprietary internal marketing plans and business development

strategy that constitute a legitimate interest under Local Rule 5.3(c)(2)(b), because they contain

data and related analysis regarding sports fans' perceptions of professional sports leagues,

including comparisons between fans' perceptions of the NBA and other entities that sponsor,

promote, and/or organize athletic competitions.(*See* Spillane Certif. ¶ 8; *Arbinet-thexchange,*

*Inc.*, 2006 WL 2828469 at *2.)The public disclosure of the Harris Interactive NBA Studies

would cause serious injury to the NBA because, if other basketball leagues, other sports entities,

or other companies and entities that provide entertainment products and services were to gain

access to the information contained within these Studies, those leagues, companies or entities could gain a competitive advantage over the NBA and adversely affect the business operations of the NBA and its member teams.  (Spillane Certif. ¶ 9; L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.)  The sensitive business information contained within the Harris Interactive NBA Integrity Studies requires redaction of the entire documents, as no less restrictive alternative to sealing the entirety of these submissions  is available.  (Spillane Certif. ¶ 9; *see* L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

## 5. *Exhibit 17 to the Hernandez Certification*

Exhibit 17 to the Hernandez Certification is a copy of a document entitled, "NCAA National Study on Sports Wagering," which is bates stamped as PLAINTIFFS' 00003490- 00003492 ("NCAA National Study"), and meets this Court's standard for sealing under Local Civil Rule 5.3(c)(2).  The NCAA has a legitimate interest that warrants permitting Plaintiffs to file the NCAA National Study under seal.  *See* L. Civ. R. 5.3(c)(2)(b).  The NCAA National Study contains highly confidential proprietary business research and information with respect to a study of gambling activity by certain individuals involved in NCAA Men's Basketball.  (*See* Certification of Naima Stevenson of the NCAA ("Stevenson Certif.") ¶ 4; *see also Goldenberg*, 2012 WL 15909 at *3 (proprietary non-public business information is a legitimate private interest).)  The public disclosure of the NCAA National Study would cause the NCAA serious injury, because the information could damage the NCAA's reputation, and its disclosure could also cause competitive and financial harm to the NCAA.  (Stevenson Certif. ¶ 5; L. Civ. R. 5.3(c)(2)(c); *see also Goldenberg*, 2012 WL 15909 at *4 (explaining that serious injury would result from the allowing the public and competitors access to internal business information); *Raaga*, 2008 WL 834399 at *4 (public disclosure would cause serious injury by harming existing and future business).)  Further, no less restrictive alternative to sealing the entirety of the NCAA

National Study is available due to the entirety of the document contains highly sensitive information of which redaction is not practical.  (Stevenson Certif. ¶ 6; *see* L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

### B.     Documents Containing Confidential League Policies

#### 1.     *Exhibits 30 and 45 to the Slocum Certification*

Exhibit 30 to the Slocum Certification is a copy of excerpts from the NBA Constitution and By-Laws and Exhibit 45 is a copy of excerpts from the NBA Operations Manual.  Both warrant sealing pursuant to the Local Rules.  The NBA has a legitimate interest that warrants an Order permitting Defendants to file both of these documents under seal.  (Spillane Certif. ¶ 4; *see* L. Civ. R. 5.3(c)(2)(b).)  The excerpts from the NBA Constitution & By-Laws that encompass Exhibit 30 address misconduct persons other than players, including wagering on NBA games by NBA personnel, along with the penalties that may be imposed for such misconduct.  (Spillane Certif. ¶ 4.)  The excerpts from the NBA Operations Manual contain an overview of the manual, the NBA's anti-gambling rules, and rules regarding restrictions on team arrangements with gambling establishments and lotteries.  (Spillane Certif. ¶ 4.)  Further, these documents are not publicly available and contain highly sensitive information, developed over years of the NBA's existence in a competitive marketplace, regarding the operation and conduct of the NBA's internal governance, rules, and operating processes.  (Spillane Certif. ¶ 5.)  In short, these documents are a corporation's non-public agreements and maintaining their confidentiality is a legitimate interest.  *See Raaga*, 2008 WL 834399 at *3.  The public disclosure of the excerpts from the NBA Constitution & By-Laws and excerpts from the NBA Operations Manual would permit competitors to view the proprietary and sensitive information regarding the NBA's business.  (Spillane Certif. ¶ 5.)  This would cause serious injury to the NBA, as it could permit other basketball leagues, other sports entities, and other companies and entities that provide

10

entertainment products and services to gain a competitive advantage against the NBA.  (*See* Spillane Certif. ¶ 6; L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.)  Finally, due to Slocum Exhibits 30 and 45 containing highly sensitive information of which redaction is not practical, no less restrictive alternative to sealing the entirety of the document is available. (Spillane Certif. ¶ 7; *see* L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

### 2. *Exhibits 40 and 41 to the Slocum Certification*

Exhibit 40 to the Slocum Certification is a copy of excerpts from the October 24-25, 2007 Minutes of the Annual Meeting of the NBA Board of Governors, and Exhibit 41 to the Slocum Certification is a copy of excerpts from the October 22-23, 2008 Minutes of the Annual Meeting of the NBA Board of Governors (collectively, "NBA Annual Meeting Minutes"), the NBA's governing body.  Good cause supports these documents being kept under seal.  *See* L. Civ. R. 5.3(c)(2); *Pansy*, 23 F.3d at 786.  These documents are kept confidential within the NBA, are not made publicly available, and reflect the Board of Governors' internal deliberations and processes, including confidential business decisions that impact specific entities and individuals. (Spillane Certif. ¶ 12; *see* L. Civ. R. 5.3(c)(2)(b); *e.g. Raaga, LLC*, 2008 WL 834399 at *3 (confidentiality of a corporation's non-public agreements is a legitimate interest).)The public disclosure of excerpts from the NBA Annual Meeting Minutes could cause serious injury to the NBA, because the documents reflect the league's confidential internal deliberations regarding specific teams and individuals, disclosure of which could put the NBA at a competitive disadvantage and impair the league's ability to govern itself effectively.  (Spillane Certif. ¶ 13; *see* L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.)  Additionally, no less restrictive alternative to sealing the excerpts of the NBA Annual Meeting Minutes is available due to the entirety of each limited excerpt containing highly sensitive information of which redaction is not practical.  Spillane Certif. ¶ 14; *see* L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

11

###### 3.    *Exhibit 42 to the Slocum Certification &*
###### *Exhibit 21 to the Hernandez Certification*

Exhibit 42 to the Slocum Certification is a copy of NFL 2009 Resolution BV1.  Good

cause supports the Resolution's being kept under seal.  *See* L. Civ. R. 5.3(c)(2); *Pansy*, 23 F.3d

at 786.  Exhibit 21 to the Hernandez Certification is Article IX of the NFL Constitution.  The

NFL has a legitimate interest that warrants the filing of these documents under seal.  *See* L. Civ.

R. 5.3(c)(2)(b).  The 2009 Resolution is not publicly available and contains highly sensitive

business information regarding the process by which regulation of interactions between the NFL

and/or its Clubs and state and municipal lotteries was developed and enacted.  (Ferazani Certif. ¶

10.)  Article IX of the NFL Constitution addresses conduct that is prohibited (including gambling

on NFL games, game-fixing, and promotion of sports wagering) of various persons affiliated

with the NFL.  (*Id.*)  These policies have been developed over years of existence in a competitive

marketplace and provide insight into confidential matters of NFL operations, including the

NFL's deliberative process, and thus the private interest of maintaining the confidentiality of a

corporation's non-public agreements applies.  (*See id.*; *Raaga*, 2008 WL 834399 at *4.)  Further,

the public disclosure of NFL 2009 Resolution BV-1 and Article IX of the NFL Constitution

would permit competitors to view proprietary and sensitive information as to how the NFL

operates the league, and the NFL's deliberative process from a closed-door meeting.  (Ferazani

Certif. ¶ 11.)  The public release of this information would cause serious injury as it could permit

other sports and entertainment entities to gain a competitive advantage against the NFL.  (*See id.*;

L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.)  No less restrictive alternative to

sealing the entirety of NFL 2009 Resolution BV-1 and Article IX of the NFL Constitution exists,

because the two documents contain highly sensitive information of which redaction is not

practical.  (Ferazani Certif. ¶ 12; L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.)

### 4.     *Exhibit 46 to the Slocum Certification*

Exhibit 46 to the Slocum Certification is a copy of excerpts from the NHL's Line of Sight Guidelines, which also warrants sealing under Local Civil Rule 5.3(c)(2).  The NHL has a legitimate interest that warrants the sealing of the excerpts from this document.  *See* L. Civ. R. 5.3(c)(2)(b).  The Line of Site Guidelines manual is kept confidential within the NHL, is not publicly available, and contains highly sensitive business and financial information that was developed over years of existence in a competitive marketplace regarding how the NHL and its teams conduct their sponsorship activities.  (Berman Certif. ¶ 7.)  The excerpts from the Line of Sight Guidelines Manual are business development and marketing plans that constitute a legitimate interest under Local Rule 5.3(c)(2)(b), as they define "Line of Sight Signage," and detail the NHL's business strategies for sale of sponsorship opportunities for signage visible during broadcasts of NHL games.  (*See* Berman Certif. ¶ 7; *Arbinet-thexchange, Inc.*, 2006 WL 2828469 at *2.)Further, the public disclosure of the excerpts from the NHL's Line of Site Guidelines manual would permit competitors to view proprietary and sensitive information as to how the NHL conducts its advertising and structures its rules and regulations relating to advertising.  (Berman Certif. ¶ 8.)  This information would cause serious harm to the NFL, as it could permit other sports and entertainment entities to gain a competitive advantage against the NHL.  (*See id.*; L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.)  Finally, no less restrictive alternative to sealing the entirety of the excerpts from the NHL's Line of Site Guidelines manual is available due to the entirety of those excerpts – a limited submission – containing highly sensitive information of which redaction is not practical.  (*See* Berman Certif. ¶ 9; L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

13

### 5. *Exhibit 20 to the Hernandez Certification*

Exhibit 20 to the Hernandez Certification is a copy of a March 21, 2008 memorandum from Ed Horne regarding "Sponsorship Rules and Guidelines fro NHL Clubs" (the "Horne Memorandum"), and it satisfies Local Civil Rule 5.3(c)(2)'s sealing standard. The NHL has a legitimate interest that warrants this document being filed under seal. *See* L. Civ. R. 5.3(c)(2)(b). The Horne Memorandum is not publicly available and contains highly sensitive business information, developed over years of the NHL's existence in a competitive marketplace, regarding the NHL's rules and procedures for NHL clubs. (Berman Certif. ¶ 10; *see Arbinet-thexchange, Inc.*, 2006 WL 2828469 at *2.) The public disclosure of the Horne Memorandum would permit competitors to view proprietary and sensitive information as to how the NHL structures its rules and regulations with respect to marketing relationships. (Berman Certif. ¶ 11.) This information would cause serious injury to the NHL, as it could permit other sports and entertainment entities to gain a competitive advantage against the NHL. (Berman Certif. ¶ 11; *see* L. Civ. R. 5.3(c)(2)(c); *Goldenberg*, 2012 WL 15909 at *4.) Further, no less restrictive alternative to sealing the entirety of the excerpts from the Horne Memorandum is available due to the entirety of the document containing highly sensitive information of which redaction is not practical. (Berman Certif. ¶ 12; *see* L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

**C.   Depositions, Reports, and Court Submissions that Discuss the Confidential Material Addressed Above**

### 1. *Exhibit 12 to the Slocum Certification & Exhibit 7 to the Hernandez Certification*

Exhibit 12 to the Slocum Certification is a copy of excerpts from the deposition transcript of Richard W. Buchanan, the Rule 30(b)(6) designee of Plaintiff National Basketball

Association, and Exhibit 7 to the Hernandez Certification is the entire transcript.[2]  Redacted

versions of each have been publicly filed, and the full documents meet the Local Rules' sealing

requirements.  (*See* Spillane Certif. ¶ 15 (setting out specific redactions).)  The NBA has a

legitimate interest that warrants an Order permitting the parties to file the Buchanan Deposition

under seal.  *See* L. Civ. R. 5.3(c)(2)(b).  The excerpts from this document that were redacted in

the publicly filed versions of the transcripts contain discussion of the confidential documents

discussed in Paragraphs 4 to 14 of the Spillane Certification, as well as proprietary and highly

sensitive business information contained in and related to those confidential documents,

principally, the contents of confidential business information the NBA produced in this case.

(*See* Spillane Certif. ¶¶15-16; L. Civ. R. 5.3(c)(2)(b).)  Additionally, the Buchanan Deposition

contains discussion, which has been redacted, of the following confidential document that is not

attached to either the Slocum Certification or Hernandez Certification, and that is not cited by

either party in any of the pending motion papers: excerpts from the 2012-2013 "Work Rules for

NBA Officials," which is not made publicly available and is distributed only for the internal use

of NBA personnel.  (*See* Spillane Certif. ¶ 17.)  This document contains highly sensitive

information, developed over years of the NBA's existence in a competitive marketplace,

regarding the NBA's internal rules and operating processes.  (*See* Spillane Certif. ¶ 17.)  Public

disclosure of the excerpts from the 2012-2013 "Work Rules for NBA Officials" would permit

competitors to view proprietary and sensitive information regarding the a critical aspect of the

NBA's business.  (*See* Spillane Certif. ¶ 17.)  This information could permit other basketball

---

[2]Due to the confidentiality review provided for by the Discovery Confidentiality Order,
Defendants publicly filed a version of excerpts from this transcript that was redacted in full.
After review, it has been determined that the entirety of this document need not be redacted.
Additionally, in Plaintiffs' briefing, filed today, relies upon additional sections of the Buchanan
deposition transcript.  As a result, the entire Buchanan deposition transcript is Exhibit 7 to the
Hernandez Certification.

leagues, other sports entities, and other companies and entities that provide entertainment products and services to gain a competitive advantage against the NBA.  (*See* Spillane Certif. ¶ 17.)  The public disclosure of the redacted sections of the Buchanan Deposition would cause serious injury to the NBA for the reasons discussed in Paragraphs 4 to 17 of the Spillane Certification.  (*See* Spillane Certif. ¶ 18; L. Civ. R. 5.3(c)(2)(c).)  Moreover, no less restrictive alternative to sealing the Buchanan Deposition is available due to the entirety of each redacted excerpt containing highly sensitive information of which less-inclusive redaction is not practical, and the remainder of the deposition remaining available for public viewing.  (*See* Spillane Certif. ¶¶ 19; L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

**2.   *Exhibit 13 to the Slocum Certification & Exhibit 1 to the Hernandez Certification and Exhibit 8 to the Slocum Certification &Exhibit 2 to the Hernandez Certification***

Exhibit 13 to the Slocum Certification is a copy of excerpts of the transcript of the deposition of Rachel Newman Baker, the Rule 30(b)(6) designee of the NCAA, and Exhibit 1 to the Hernandez Certification is the entire deposition transcript.  Exhibit 8 to the Slocum Certification is a copy of excerpts of the transcript of the Deposition of Dr. Mark Emmert, President of the NCAA, and Exhibit 2 to the Hernandez Certification is the entire deposition transcript.  Redacted versions of each have been publicly filed, and good cause supports sealing the full documents.  (*See* Stevenson Certif. ¶¶ 7-8 (setting out specific redactions); L. Civ. R. 5.3(c)(2); *Pansy*, 23 F.3d at 786.)The NCAA has a legitimate interest that warrants an Order permitting the parties to file the Baker Deposition and Emmert Deposition under seal.  *See* L. Civ. R. 5.3(c)(2)(b).  Portions of the publicly filed redactions in the Baker Deposition and all of the publicly filed redactions in the Emmert Deposition contain information regarding ongoing NCAA investigations into alleged improprieties related to sports wagering.  (Stevenson Certif. ¶ 9; *see* L. Civ. R. 5.3(c)(2)(b); *e.g. Raaga, LLC*, 2008 WL 834399 at *3 (confidentiality of a

16

corporation's non-public agreements is a legitimate interest).)  Investigation of such allegations

is central to the NCAA's fundamental purpose of ensuring the integrity of intercollegiate

athletics and protecting student-athletes.  (Stevenson Certif. ¶ 10.)  The public disclosure of these

redacted portions of the Baker Deposition and Emmert Deposition would effect "a clearly

defined and serious injury" as disclosure of the redacted information can negatively impact the

investigations that were discussed during the deposition along with the individuals and entities

involved in those investigations and can also impact future enforcement action by undermining

the investigation process.  (Stevenson Certif. ¶ 11; *see* L. Civ. R. 5.3(c)(2)(d).)  In addition, the

remaining portions of the Baker Deposition that were redacted in the version publicly filed with

the Court contain information regarding the NCAA National Study and two other highly

confidential studies addressing the same subject matter with respect to certain individuals

involved in NCAA Men's Baseball and NCAA Women's Basketball.  (Stevenson Certif. ¶ 12.)

The public disclosure of these redacted portions of the Baker Deposition would also cause

serious injury to the NCAA for the reasons discussed in Paragraphs 4 to 6 of the Stevenson

Certification and in the section above that addresses the NCAA National Study.  (*Id.*)  Finally, no

less restrictive alternative to sealing the unredacted Baker Deposition and Emmert Deposition is

available due to the entirety of each redacted excerpt containing highly sensitive information of

which less-inclusive redaction is not practical, and the remainder of the depositions having been

made available for public viewing.  (Stevenson Certif. ¶ 13; *see* L. Civ. R. 5.3(c)(2)(d);

*Goldenberg*, 2012 WL 15909 at *4.)

### 3.    *Exhibit 16 to the Slocum Certification &*
### *Exhibit 3 to the Hernandez Certification*

Exhibit 16 to the Slocum Certification contains excerpts from the deposition transcript of

Lawrence P. Ferazani, Jr., the Rule 30(b)(6) designee of Plaintiff National Football League

("Ferazani Deposition").  Exhibit 3 to the Hernandez Certification contains the entire deposition

transcript.  Confidential information was redacted from the public versions of each Exhibit.  (*See*

Ferazani Certif. ¶ 13.)  The NFL has a legitimate interest that warrants an Order permitting

Defendants to file the Ferazani Deposition under seal, because the redacted excerpts contain

discussion of proprietary and highly sensitive business information, specifically the confidential

documents discussed above and in Paragraphs 4-12 of the Ferazani Certification and the

additional information discussed at Paragraph 15 of the Ferazani Certification.  (Ferazani Certif.

¶¶ 13-15; L. Civ. R. 5.3(c)(2)(b).)  The public disclosure of the redacted sections of the Ferazani

Deposition Excerpts would cause serious injury to the NFL for the reasons discussed in

Paragraphs 4-12 and 15 of the Ferazani Certification, which set out the confidential nature of the

documents discussed in the Ferazani Deposition Excerpts, the interests that warrant the sealing of

that information, the harm that would be caused by the information's public disclosure, and why

sealing – in the manner provided – is the least restrictive alternative available.  (Ferazani Certif. ¶

16; L. Civ. R. 5.3(c)(2)(c).)  Finally, no less restrictive alternative to sealing the Ferazani

Deposition is available due the publicly filed version having already been redacted to exclude

confidential information.  (Ferazani Certif. ¶ 17; L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL

15909 at *4.)

### 4.    *Exhibit 19 to the Slocum Certification & Exhibit 9 to the Hernandez Certification*

Exhibit 19 to the Slocum Certification is a copy of excerpts from the transcript of the

deposition of Gary B. Bettman, Commissioner and Rule 30(b)(6) designee of the National

Hockey League and Exhibit 9 to the Hernandez Certification is the entire deposition.  Both

Exhibits meet Local Civil Rule 5.3(c)(2)'s sealing requirements.  The NHL has a legitimate

interest that warrants an Order permitting Defendants to file the Bettman Deposition transcript

18

under seal.  Certain excerpts from this document – which have been redacted in the publicly filed version of the full transcript that was filed as Exhibit 9 to the Hernandez Certification – contain discussion of proprietary and highly sensitive business information, principally, the contents of confidential business information the NHL produced in this case.  (*See* Berman Certif. ¶¶ 13-14; *see* L. Civ. R. 5.3(c)(2)(b).)  These underlying documents and the rationale for why they should appropriately be sealed in this action – including the serious harm that their public disclosure would cause to the NHL – are discussed above and in Paragraphs 4 to 12 and 15 of the Berman Certification.  (*See* Berman Certif. ¶¶ 13-17; *see* L. Civ. R. 5.3(c)(2)(b)-(d).)  No less restrictive alternative to sealing the excerpts from the Bettman Deposition Excerpts is available due to the entirety of each excerpt containing highly sensitive information of which less-inclusive redaction is not practical.  (*See* Berman Certif. ¶ 17; *see* L. Civ. R. 5.3(c)(2)(d); *Goldenberg*, 2012 WL 15909 at *4.)

### 5.    *Exhibit 1 to the Slocum Certification &*
### *Exhibit 31 to the Hernandez Certification*

Exhibit 1 to the Slocum Certification is the November 21, 2012 Expert Report of Professor Robert D. Willig, which was prepared on behalf of Defendants, and meets Local Civil Rule 5.3(c)(2)'s sealing requirements.  The publicly filed version of Exhibit 1 contains redactions of the transcript wherein Mr. Willig cited and quoted information from documents that were designated as "confidential" or "highly confidential" during discovery, and Defendants seek to seal an unredacted version of Exhibit 1.  The reasons why the substance of the redacted information meets the standards for sealing under Local Civil Rule 5.3(c)(2) is discussed in the Certifications provided by representatives of the NCAA, NBA, NFL, and NHL and the analysis

19

above.[3] (*See* Stevenson Certif. ¶¶ 14-16 (regarding the section of the Willig report that discusses specific incidents of point shaving scandals in intercollegiate athletics based on an understanding derived from portions of the Baker Deposition that are discussed in Paragraphs 10 and 11 of the Stevenson Certification); Ferazani Certif.  ¶¶ 18-20 (regarding the section of the Willig report that discuss Copernicus I, which is addressed above and in Paragraphs 7 to 9 of the Ferazani Certification).)  As a result, the limited redactions of Mr. Willig's citations to and discussion of the confidential information discussed below warrant the filing of the unredacted version of Mr. Willig's expert report under seal set forth in Local Civil Rule 5.3(c)(2).

Exhibit 31 to the Hernandez Certification is the transcript of Mr. Willig's November 30, 2012 deposition in this case.  As in Exhibit 1, it contains redactions where Mr. Willig discussed information from documents that were designated as "confidential" or "highly confidential" during discovery, namely the contents of confidential business information Plaintiffs produced in this case.  All of these redactions relate to quotations and discussion of documents that are discussed above, and for the same reasons as they seek to file an unredacted version of Mr. Willig's expert report, Plaintiffs seek to seal an unredacted version of Mr. Willig's deposition transcript.  (*See* Spillane Certif. ¶¶ 20-23 (regarding the section of the Willig deposition that refers to the Harris Interactive NBA Studies discussed in Paragraphs 8 to 10 of the Spillane Certification and above); Stevenson Certif. ¶¶ 17-20 (regarding the section of the Willig deposition discussing portions of the Baker Deposition that concerned ongoing NCAA investigations into alleged improprieties as to sports fixing and gambling, which is addressed in Paragraphs 10, 11, and 13 of the Stevenson Certification and above).)

---

[3] One redaction within the Willig Report is not addressed in the Certifications provided by representatives of the NCAA, NBA, NFL, and NHL.  On page 19, the redaction in paragraph 44 and footnote 56 is testimony from Commissioner Selig, from which the confidentiality designation has since been removed.

20

> **6.**     ***Defendants' Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment; Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1; Plaintiffs' Reply Brief in Support of their Motion for Summary Judgment and, if Necessary to Preserve the Status Quo, a Preliminary Injunction, and Brief in Opposition to Defendants' Cross-Motion for Summary Judgment; Plaintiffs' Reply Statement of Undisputed Material Facts Pursuant to Local Rule 56.1; and Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1***

Finally, the redactions within Defendants' Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment; Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1; Plaintiffs' Reply Brief in Support of their Motion for Summary Judgment and, if Necessary to Preserve the Status Quo, a Preliminary Injunction, and Brief in Opposition to Defendants' Cross-Motion for Summary Judgment; Plaintiffs' Reply Statement of Undisputed Material Facts Pursuant to Local Rule 56.1; and Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 all refer to the "confidential" and "highly confidential" documents discussed above and the redactions are limited to the discussions of those "confidential" and "highly confidential" documents.  For the reasons stated above and in the Certifications submitted on behalf of the NCAA, NBA, NHL, and NFL, the redacted information should remain under a seal of indefinite duration.

### D.     Documents For Which Sealing Is Unnecessary

> **1.**     ***Exhibits 5, 9, 10 and 11 to the Slocum Certification***

Exhibits 5, 9, 10, and 11 to the Slocum Certification are copies of excerpts from deposition transcripts of David J. Stern, Commissioner of the National Basketball Association; Allan H. Selig, Commissioner of the Office of the Commissioner of Major League Baseball d/b/a Major League Baseball; Thomas Ostertag, a Rule 30(b)(6) designee of the Office of the

Commissioner of Major League Baseball d/b/a Major League Baseball; and Daniel T. Mullin, a Rule 30(b)(6) designee of Major League Baseball d/b/a Major League Baseball.  These documents were sealed by Defendants, because the time allotted by the Confidential Discovery Order for Plaintiffs to review the documents and make confidentiality designations had not yet expired.  Subsequently, it has been determined that the excerpts attached as Exhibits 5, 9, 10, and 11 are not confidential.  Full versions of the depositions from which excerpts were previously submitted are now filed as Exhibits 8, 5, 4, and 10, respectively, to the Hernandez Certification.

### 2. *Exhibit 14 to the Slocum Certification*

Exhibit 14 to the Slocum Certification is a copy of the Results of NCAA Gambling Surveys and Trends in Sports Wagering Cases.  Defendants mistakenly filed this document under seal although it was never designated confidential or highly confidential.

### 3. *Exhibits 15 and 32 to the Slocum Certification*

Exhibit 15 to the Slocum Certification is a copy of the NFL's Gambling Policy.  Exhibit 32 is a copy of the NHL Constitution and By-Laws.  While these documents were designated as confidential during discovery, upon further review Plaintiffs are withdrawing the confidentiality designation.  As a result, these documents should not to be subject to seal.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Seal should be granted as indicated

above and Plaintiffs' cross-motion to seal should be granted in its entirety.

Dated:  December 7, 2012                   Respectfully submitted,

                                           **MCCARTER & ENGLISH, LLP**

                                           By: *s/William J. O'Shaughnessy*
                                                William J. O'Shaughnessy
                                                Richard Hernandez
                                                Four Gateway Center
                                                100 Mulberry St.
                                                Newark, New Jersey 07102
                                                (973) 622-4444
                                                woshaughnessy@mccarter.com
                                                rhernandez@mccarter.com

                                                Jeffrey A. Mishkin
                                                Anthony J. Dreyer
                                                **SKADDEN ARPS SLATE MEAGHER &**
                                                   **FLOM LLP**
                                                Four Times Square
                                                New York, NY 10036
                                                (212) 735-3000
                                                jmishkin@skadden.com
                                                adreyer@skadden.com

                                                Paul D. Clement (*pro hac vice* request to be filed)
                                                Erin E. Murphy (*pro hac vice* request to be filed)
                                                **BANCROFT PLLC**
                                                1919 M Street, N.W., Suite 470
                                                Washington, DC 20036
                                                (202) 234-0090
                                                pclement@bancroftpllc.com
                                                emurphy@bancroftpllc.com

                                                *Attorneys for Plaintiffs*
                                                   *National Collegiate Athletic Association,*
                                                   *National Basketball Association, National*
                                                   *Football League, National Hockey League, and*
                                                   *Office of the Commissioner of Baseball, doing*
                                                   *business as Major League Baseball*

23